UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

PIERRE TURNER,

                Petitioner,

                                          Case No. 2:23-cv-167

v.

                                          Hon. Hala Y. Jarbou

SARAH SCHROEDER,

                Respondent.

_____/

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Pierre Turner is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On September 13, 2021, Petitioner pleaded guilty in the Kalamazoo County Circuit Court to second degree arson, in violation of Mich. Comp. Laws § 750.731. On October 18, 2021, the trial court sentenced Petitioner to 333 days in jail, with credit for 333 days served, as well as three years of probation.

On January 4, 2022, a probation violation warrant was issued for Petitioner's arrest. At a probation violation hearing held on February 22, 2022, the trial court found Petitioner guilty of violating his probation. On March 21, 2022, the court sentenced Petitioner to 90 months to 20 years' incarceration, with credit for 417 days of time served.

On August 30, 2023, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

    I.       The trial court abused its discretion by denying defense counsel's motion to withdraw as counsel.

II.     The trial court abused its discretion by denying the motion to adjourn the probation violation hearing.

III.    The trial court abused its discretion by proceeding with probation agent's testimony "via Zoom."

IV.     [Petitioner] was deprived [of] his right to be physically present during sentencing.

(Pet., ECF No. 1, PageID.5–10.) Respondent contends that Petitioner's grounds for relief are meritless.[1] (ECF No. 13.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.     Factual Allegations

On September 13, 2021, Petitioner pleaded guilty in the Kalamazoo County Circuit Court to second degree arson, in violation of Mich. Comp. Laws § 750.731. (ECF No. 14-9, PageID.303.) On October 18, 2021, the trial court sentenced Petitioner to 333 days in jail, with credit for 333 days served, as well as three years of probation. (*Id.*) Petitioner's probation conditions included a condition that he have no contact with an individual named Sierra Ramsey. (*Id.*)

---

[1] Respondent also contends that habeas ground III is unexhausted. (ECF No. 13, PageID.93.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

On January 4, 2022, the trial court issued a probation violation warrant for Petitioner's arrest. (ECF No. 14-4.) The warrant charged Petitioner with the following violations of his probation: (1) assaulting Sierra Ramsey on or about December 31, 2021; (2) having contact with Sierra Ramsey; (3) engaging in assaulting, abusive, and/or intimidating behavior by assaulting Sierra Ramsey; and (4) using alcohol on or about December 31, 2021. (*Id.*)

The trial court started to conduct Petitioner's probation violation hearing on February 10, 2022. (ECF No. 14-5.) Prior to addressing the alleged probation violations, the trial court considered Petitioner's counsel's motion to withdraw as counsel of record. Counsel represented that there had been a "fundamental breakdown of [the] attorney/client relationship" and that he and Petitioner were "no longer able to converse reasonably about this case." (*Id.*, PageID.235.) When the court questioned Petitioner about the situation, Petitioner stated that he and his attorney were "just not getting along" and that Petitioner had not been able to get in contact with his attorney at all. (*Id.*, PageID.237.) Ultimately, however, the trial court denied the request for a new attorney. (*Id.*, PageID.242.) The trial court justified that decision by noting that the request was made at "the last hour" and that the parties and witnesses were "ready to go." (*Id.*, PageID.243.)

Petitioner's counsel then moved to adjourn the hearing, arguing that his witnesses were not there because they had been told to be in court in the afternoon, and the court had moved the hearing to the morning. (*Id.*, PageID.244–245.) The trial court denied the request for an adjournment, stating that it would hear testimony from Petitioner's probation officer, Stacey King, and that the hearing could be continued at another time. (*Id.*, PageID.245–246.)

Before Ms. King testified, Petitioner's counsel objected to her not being present in person. (*Id.*, PageID.251.) The court noted the objection for the record but indicated that it had been "handling probation violations all along this way." (*Id.*) Ms. King testified that she was contacted

3

by the Kalamazoo Department of Public Safety on December 31, 2021. (*Id.*, PageID.253.) The alleged violations occurred at Petitioner's approved residence. (*Id.*, PageID.254.) Ms. King testified that on December 31, 2021, Sierra Ramsey contacted 911, stating that Petitioner "was residing in her house, and that she knew that there was a no contact order in place, and that he had made threats to harm both her and her children." (*Id.*, PageID.256.) Ms. Ramsey also reported that Petitioner had "grabbed her by the arm and pulled her hair." (*Id.*) Petitioner admitted to law enforcement that he had been living with Ms. Ramsey at that residence. (*Id.*, PageID.257.)

The trial court continued the probation violation hearing on February 22, 2022. (ECF No. 14-6.) At that time, Allison Baker testified via Zoom. (*Id.*, PageID.270.) Baker testified that she is a public safety officer for the Kalamazoo Department of Public Safety, and that she was dispatched to the residence in question on December 31, 2021. (*Id.*, PageID.272.) Baker interviewed Petitioner, who told Baker that he had "gotten into a verbal argument with Sierra." (*Id.*, PageID.274.) Petitioner "advised that there was no physical altercation, it was just a verbal disagreement." (*Id.*) Petitioner admitted that he had been living in the apartment with Ms. Ramsey. (*Id.*) Baker was the one who reached out to Ms. King regarding Petitioner. (*Id.*, PageID.275.)

Petitioner did not present any witnesses in his defense. (*Id.*, PageID.280.) Ultimately, the trial court found Petitioner guilty of violating count II of the probation violation warrant, which charged Petitioner with having contact with Ms. Ramsey in violation of his probation conditions. (*Id.*, PageID.284.) The court also found Petitioner guilty of violating count III of the warrant, which charged Petitioner with engaging in abusive and/or intimidating behavior. (*Id.*, PageID.285.) The court found Petitioner not guilty of counts I and IV, which charged Petitioner with assaulting Ms. Ramsey and consuming alcohol. (*Id.*, PageID.286.)

Petitioner appeared before the trial court for his probation violation sentencing on March 21, 2022. (ECF No. 14-8.) As noted above, the court sentenced Petitioner to 90 months to 20 years' incarceration, with credit for 417 days served. (*Id.*, PageID.298.)

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Court of Appeals, raising the four claims Petitioner now raises in his § 2254 petition. (ECF No. 14-9, PageID.307.) The court of appeals denied Petitioner's application for leave to appeal in an order entered on April 20, 2023. (ECF No. 14-9, PageID.302; ECF No. 14-10, PageID.467.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on August 22, 2023. (ECF No. 14-10, PageID.467.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

5

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

6

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.      Discussion

####      A.      Ground I—Denial of Motion to Withdraw

As his first ground for relief, Petitioner contends that the trial court abused its discretion by denying defense counsel's motion to withdraw. (Pet., ECF No. 1, PageID.5.) Petitioner contends that the breakdown in communication between himself and counsel deprived him of his "constitutional right to present a defense." (*Id.*)

As noted above, the trial court denied counsel's motion to withdraw. (ECF No. 14-5, PageID.242.) The court understood "that there might be some disagreement, but it is the last hour. And unfortunately, again, we have last minute requests for new attorneys and I'm not gonna grant it." (*Id.*, PageID.243.) Petitioner challenged this determination on direct appeal, and the court of appeals denied his application for leave to appeal "for lack of merit in the grounds presented." (ECF No. 14-9, PageID.302.)

Although the court of appeals did not issue a written opinion setting forth its reasoning for denying Petitioner's claim, ultimately, on habeas review, whether or not there was a complete breakdown in the attorney-client relationship is immaterial because clearly established federal law does not tie substitution of counsel to such a breakdown. Indeed, many of the factors that courts look to when evaluating whether or not to substitute counsel are derived from the opinions of lower

federal courts[2] or even the United States Supreme Court interpreting the Federal Rules of Criminal Procedure[3] or federal statutes.[4]

United States Supreme Court authority regarding the ***federal constitutional*** requirement to provide substitute appointed counsel is scant. The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624.

---

[2] For example, the Sixth Circuit holds an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011).

[3] For example, cases interpreting Federal Rule of Criminal Procedure 44 regarding the court's obligation to inquire into potential conflicts that might exist when there is joint representation. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 161 (1988); *Mickens v. Taylor*, 535 U.S. 162 (2002).

[4] For example, in *Martel v. Clair*, 565 U.S. 648 (2012), the Supreme Court considered the appropriate standard for permitting the substitution of counsel appointed for capital defendants and habeas petitioners pursuant to 18 U.S.C. § 3599. The Court settled on the "interests of justice" standard employed for substitution requests in non-capital cases under 18 U.S.C. § 3006A. The Court described the context-specific inquiry attendant to that standard by reference to the factors that courts might consider: "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel*, 565 U.S. at 663. The Sixth Circuit Court of Appeals concluded that *Martel* "centered on the federal statutory standard for reviewing substitution motions, and not the Sixth Amendment." *Wallace v. Chapman*, No. 19-1374, 2019 WL 4943757, at *3 n.1 (6th Cir. Sept. 23, 2019).

As the Sixth Circuit explained in *Peterson v. Smith*, 510 F. App'x 356 (6th Cir. 2013):

The Sixth Amendment right to counsel does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Although Peterson relies on a Ninth Circuit decision finding that being forced to proceed with appointed counsel despite the complete breakdown of the attorney-client relationship violated the right to counsel, the en banc court vacated that decision precisely because the state court decision denying new counsel was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) (en banc), *rev'g Plumlee v. Sue del Papa*, 426 F.3d 1095 (9th Cir. 2005).

Peterson further argues that the trial court failed to make the inquiry this court would require of a district court considering a defendant's request for substitute counsel. *See United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir.2007). Not only does it appear that the trial court made sufficient inquiry, the failure to do so could not be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent. *See Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012) (per curiam) (finding requirement that court inquire into good cause was not clearly established Federal law); *James v. Brigano*, 470 F.3d 636, 643 (6th Cir.2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law). Of course, that would not preclude petitioner from seeking relief on the grounds that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel at trial. *Brooks*, 454 F. App'x at 452 (relying on *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts")).

*Peterson*, 510 F. App'x at 366–67; *see also Wallace*, 2019 WL 4943757, at *3 n.1 (stating that the petitioner "could prevail on his substitution-of-counsel claim only by showing 'that the refusal to appoint new counsel resulted in a denial of effective assistance of counsel at trial'" (quoting *Peterson*, 510 F. App'x at 366–67)).

Here, Petitioner's entire argument is focused on demonstrating a breakdown in his relationship with counsel, not the adequacy of representation counsel provided at the probation violation hearing. Specifically, in his reply brief, Petitioner reiterates that he and counsel had limited contact, were unable to converse reasonably about the case, and that counsel had not represented Petitioner on the underlying offense. (ECF No. 15, PageID.527.) Although Petitioner

vaguely contends that he "had a right to effective assistance of counsel," he provides no argument about how counsel was ineffective during the two-day probation violation hearing. Accordingly, Petitioner has failed to demonstrate that the state court's rejection of the request to withdraw as counsel is contrary to, or an unreasonable application of, clearly established federal law. Thus, Petitioner is not entitled to habeas relief with respect to habeas ground I.

### B.      Ground II—Denial of Motion to Adjourn

In habeas ground II, Petitioner faults the trial court for abusing its discretion by denying Petitioner's counsel's motion to adjourn the probation revocation proceeding. (Pet., ECF No. 1, PageID.7.) Petitioner contends that as a result, he was "deprived [of his] right to present a material witness, who was willing to testify on [Petitioner's] defense." (*Id.*)

A trial judge has broad discretion to grant or deny a request for a continuance or adjournment. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983). To succeed on a challenge to the denial of such a request, a habeas petition must demonstrate not only an abuse of discretion, but also that the decision was "arbitrary and fundamentally unfair that it violate[d] constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774–75 (6th Cir. 1986). The denial of a request for a continuance or adjournment rises to the level of a federal due process violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay." *Morris*, 461 U.S. at 11–12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). The petitioner must demonstrate that the denial of such a request resulted in actual prejudice to his defense. *See Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice can be demonstrated "by showing that a continuance would have made relevant witnesses available or added something to the defense." *United States v. Harbour*, 417 F. App'x 507, 513 (6th Cir. 2011) (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)).

11

In *Morrissey v. Brewer*, the United States Supreme Court held that an individual facing parole revocation proceedings has the right to "be heard in person and to present witnesses and documentary evidence." 408 U.S. 471, 489 (1972). A year later, the Supreme Court extended the due process requirements set forth in *Morrissey* to probation revocation proceedings. *See Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973).

*Morrissey* and *Gagnon* establish that Petitioner had a right to present witnesses in his defense at his probation revocation hearing. Petitioner, however, has not established that the denial of his counsel's request for an adjournment violated his due process rights. The record reflects that counsel moved for an adjournment because the defense witnesses were not present. (ECF No. 14-5, PageID.244.) Counsel noted that the witnesses were told to be present at 3:00 p.m. (*Id.*) Counsel asserted that it would be prejudicial to Petitioner "to have this case bifurcated in this way." (*Id.*) Counsel represented that if they "could get the witnesses here by tomorrow, then we should adjourn it till tomorrow and have the whole case held at that time." (*Id.*) In response, the prosecutor noted that its one witness had "been here all morning" (via Zoom videoconferencing). (*Id.*, PageID.245.) Probation Officer Stacey King then noted that she would not be available the following day because she had to be "in another court all day tomorrow." (*Id.*)

The court denied Petitioner's counsel's request, stating:

> And again, so the matter is scheduled today for the formal. Again, I know that it was initially scheduled for the afternoon. Sounds like there were some witnesses that were subpoenaed for this afternoon. The court, two weeks ago I think, moved it to the morning for the Court's schedule.

> Miss King is here; she's ready to testify. She's been sitting here I think for about two hours now ready to testify, and so I'm gonna take her testimony. And we can certainly let the witnesses know when they show up this afternoon—as they should cause they're under subpoena, that it's continued to tomorrow morning. They need to be here tomorrow morning and we will continue on with the hearing then.

> There's no prejudice for a bifurcated two-day hearing. It's the Court that's hearing this. I'm well aware of what the burden is. I'm well aware of how probation

> violations work and so there is no prejudice. We'll just take testimony today and
> we'll finish up with the testimony tomorrow.

(*Id.*, PageID.245–246.)

As an initial matter, Petitioner's counsel did not explain why he believed bifurcating the probation revocation hearing would prejudice Petitioner in any way. Moreover, the record reflects that the trial court did not unreasonably and arbitrarily insist upon continuing with the hearing. As noted above, Ms. King was present via Zoom for about two hours waiting to testify. She was not available the following day, when the court proposed the hearing could continue. The trial court also noted that it "ha[d] a busy docket coming up with COVID." (*Id.*, PageID.243.) Given those facts, it was reasonable for the trial court to want to move forward and hear Ms. King's testimony, with the understanding that the hearing would continue another day.

Furthermore, Petitioner has not demonstrated actual prejudice from the court's denial of the request for an adjournment. Petitioner states only that as a result, he was "deprived [of his] right to present a material witness, who was willing to testify on [Petitioner's] defense." (Pet., ECF No. 1, PageID.7.) Notably, even when the probation revocation hearing continued on February 22, 2022, Petitioner did not present any witnesses for his defense. Furthermore, throughout his state court pleadings as well as his § 2254 petition, Petitioner has failed to provide any information regarding who the supposed material witness was, how his or her testimony was material, and the contents of his or her proposed testimony. Petitioner's speculation that this witness was material to his defense simply does not permit the Court to conclude that he suffered actual prejudice from the trial court's denial of the request for an adjournment. *Cf. United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (noting that "[a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim").

13

Upon consideration of the foregoing, Petitioner has not demonstrated that the state courts' rejection of his claim concerning the denial of an adjournment is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground II.

### C.      Ground III—Taking Probation Officer's Testimony Via Zoom

As his third ground for relief, Petitioner contends that the trial court abused its discretion by allowing probation officer Stacey King to testify via Zoom. (Pet., ECF No. 1, PageID.8.) Petitioner argues that he did not waive his right to confrontation and that he wanted to cross-examine Ms. King with the assistance of counsel. (*Id.*) Petitioner suggests that counsel did not object to allowing Ms. King to testify via Zoom. (*Id.*) Given Petitioner's reference to his "right to confrontation," it appears that Petitioner is asserting that allowing Ms. King to testify via Zoom violated his Sixth Amendment Confrontation Clause rights.

First, Petitioner is mistaken that counsel did not object to Ms. King being permitted to testify via Zoom. As noted above, counsel did object to Ms. King not being physically present. (ECF No. 14-5, PageID.251.) The court noted the objection for the record and stated that it had been "handling probation violations all along this way." (*Id.*)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause, therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless

the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Petitioner's reliance on the Confrontation Clause is misplaced. This is not a situation where Ms. King was unavailable and the prosecution sought to admit out-of-court testimonial statements made by Ms. King. Moreover, the record shows that Petitioner, through counsel, was able to thoroughly cross-examine Ms. King. Furthermore, while Petitioner takes issue with the fact that the trial court allowed Ms. King to testify remotely via Zoom, Petitioner has not cited, and the Court has not located, any clearly established federal law holding that the use of such remote testimony violates an individual's constitutional rights.

In any event, even if the Confrontation Clause precluded the use of remote testimony, it is well settled that a probation or parole revocation does not "equate . . . to a criminal prosecution in any sense." *Morrissey*, 408 U.S. at 489. The *Morrissey* Court noted that a parole revocation "is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* A year later, the Supreme Court explicitly noted that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution." *Gagnon*, 411 U.S. at 782.

Notably, in *United States v. Kirby*, 418 F.3d 621 (6th Cir. 2005), the United States Court of Appeals for the Sixth Circuit relied upon *Morrissey* and *Gagnon* to conclude that *Crawford* and the Confrontation Clause "do not apply to revocation of supervised release hearings." *Id.* at 628. In so holding, the Sixth Circuit noted:

> It is an open question in this circuit whether the rule announced in *Crawford* applies to revocation of supervised release hearings. Two circuits have held that *Crawford* does not apply to these hearings. In *United States v. Martin*, the Eighth Circuit reasoned that *Crawford* did not apply during a revocation hearing because "the constitutional standard applicable in this type of post-conviction revocation hearing will sometimes permit the admission of evidence that would otherwise be

inadmissible in a criminal prosecution." 382 F.3d 840, 844 (8th Cir. 2004). In *United States v. Aspinall*, the Second Circuit declined to apply *Crawford* in the context of a revocation hearing. 389 F.3d 332 (2d Cir.2004), *abrogated on other grounds as recognized in United States v. Fleming*, 397 F.3d 95, 99 n.5 (2d Cir. 2005). The court held that the Confrontation Clause by its terms applied only to criminal prosecutions. *Id.* at 342–43. It relied on the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), which established that revocation hearings are not criminal prosecutions and therefore the defendant was not entitled to the "full panoply of rights due a defendant" in criminal proceedings. *Id.* at 342 (quoting *Morrissey*, 408 U.S. at 480, 92 S. Ct. 2593).

We agree with the Second and Eighth Circuits and hold that *Crawford* does not apply to revocation of supervised release hearings. In so holding, we are persuaded by the following considerations. First, *Crawford* was an interpretation of the Sixth Amendment. The text of the Sixth Amendment specifically states that it applies "[i]n all criminal prosecutions." In *Morrissey*, the Supreme Court observed that "there is no thought to equate . . . [a] parole revocation to a criminal prosecution in any sense." 408 U.S. at 489, 92 S. Ct. 2593; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution . . . ."). Further, we have held that Confrontation Clause protections do not extend to sentencing hearings. *United States v. Silverman*, 976 F.2d 1502, 1514 (6th Cir. 1992) (en banc) (discussing the "inapplicability of the Confrontation Clause to the sentencing procedure"). This precedent establishes that the protections of the Sixth Amendment do not extend to revocation hearings or other sentencing proceedings. Second, it is well-established that the court may consider evidence at a revocation hearing that would be inadmissible in a criminal prosecution. *Morrissey* states that the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S. Ct. 2593. Courts holding revocation hearings consistently have been able to "consider hearsay if it is proven to be reliable." *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991). Finally, there is no indication that the Supreme Court intended *Crawford* to apply to revocation hearings or that the Supreme Court intended to overrule *Morrissey*.

*Kirby*, 418 F.3d at 627–28.[5]

Upon consideration of the foregoing, the Court cannot say that the state courts' rejection of Petitioner's claim regarding the probation officer being allowed to testify via Zoom is contrary

---

[5] The Court recognizes that decisions from the circuit courts do not constitute clearly established federal law for purposes of AEDPA. *See Parker v. Matthews*, 567 U.S. 37, 48 (2012). However, the *Kirby* decision provides insight into how the circuits have approached the issue of whether the Confrontation Clause applies at revocation proceedings.

16

to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### D.      Ground IV—Deprivation of Right to Be Physically Present During Sentencing

Finally, as habeas ground IV, Petitioner contends that he was "deprived [of] his right to be physically present during sentencing." (Pet., ECF No. 1, PageID.10.) Petitioner avers that this was a critical stage, and that he "wanted to challenge sentencing errors." (*Id.*) Petitioner advised counsel of this, but counsel did not object, leading to a "breakdown in communication." (*Id.*)

"One of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). Furthermore, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *see also Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (defining a "critical stage" as any "stage of a criminal proceeding where substantial rights of a criminal accused may be affected"). In situations where the defendant "is not actually confronting witnesses or evidence against him," the right to be present "is protected by the Due Process Clause." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam). Thus, the Due Process Clause protects the right to be present at sentencing on the underlying charge because "sentencing is a critical stage of the criminal proceeding." *Gardner v. Florida*, 430 U.S. 349, 358 (1977).

As discussed *supra*, in Part III.C, however, probation revocation proceedings are not part of the criminal prosecution. Accordingly, during a probation revocation proceeding, a defendant is not entitled to the "full panoply of rights due a defendant" in a criminal proceeding. *Morrissey*, 408 U.S. at 480. Petitioner has not cited, and the Court has not located, any Supreme Court

authority clearly establishing that a probation revocations sentencing is a "critical stage" to which the right to be present attaches.

The Court notes that in *Mempa*, the Supreme Court considered "the question of the extent of the right to counsel at the time of sentencing where the sentencing has been deferred subject to probation." *Mempa*, 389 U.S. at 130. The petitioners in *Mempa* had pleaded guilty and were placed on probation, with deferral of imposition of sentence. *Id.* at 130–132. They were subsequently found to have violated their probation. *Id.* The petitioners' probation was revoked, and they were sentenced to prison. *Id.* Neither petitioner, however, had the benefit of counsel at the hearings where their probation was revoked and they were sentenced to incarceration. *Id.* The petitioner subsequently sought habeas relief, and the Supreme Court held that "a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." *Id.* at 137.

Although Petitioner was not subject to deferred sentencing, *Mempa* could lend some support for the conclusion that his probation revocation constituted a "critical stage" implicating Petitioner's right to be present. However, the Supreme Court has "emphasized that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Stincer*, 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106–07 (1934)). Thus, the right to be present encompasses situations where "a fair and just hearing would be thwarted" by the defendant's absence. *Id.* The right "exists only when '[the defendant's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005)).

18

Here, although Petitioner was not physically present for his probation revocation sentencing, he was remotely present via videoconferencing. Given that fact, Petitioner has not demonstrated that the state courts' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. In his § 2254 petition, Petitioner asserts that he wanted to be physically present "to challenge sentencing errors." (Pet., ECF No. 1, PageID.10.) Petitioner, however, does not explain what alleged errors he wanted to challenge, nor does he explain how he was unable to assert any desired challenges via his remote appearance. Likewise, although Petitioner suggests in his reply brief that the trial court was unable to discern his body language via Zoom, placing Petitioner "at a disadvantage for a possible lenient sentence," Petitioner simply fails to explain how the court's viewing of Petitioner's body language via a remote connect would have markedly differed, if in any way, from seeing it in person. (ECF No. 15, PageID.530.)

The record reflects that, despite appearing remotely via videoconferencing, Petitioner was fully able to interact with the trial court during his probation revocation sentencing. Petitioner confirmed that he had reviewed the presentence investigation report with his attorney. (ECF No. 14-8, PageID.292.) The court advised Petitioner that it had received his letter and asked if he had anything more he would like to say. (*Id.*, PageID.294–295.) Petitioner responded: "Uh, Your Honor, there's—there's not really too much to say. (inaudible) you gotta do what you gotta do, and I ask for forgiveness." (*Id.*, PageID.295.) After the attorneys set forth their arguments, Petitioner addressed the court further, arguing that his probation officer had been aware that Petitioner was living with Ms. Ramsey, that he "deserve[d] a chance," and that it was wrong "the way [Ms. King was] just letting [him] take the fall." (*Id.*, PageID.296.) Petitioner fails to explain

that he "could have done anything [more] had he been at the hearing [or that he] would have gained anything by attending." *Stincer*, 482 U.S. at 747 (quoting *Gagnon*, 470 U.S. at 527).

In sum, Petitioner has not demonstrated that the state courts' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

20

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated: May 13, 2024                                      /s/ Hala Y. Jarbou
                                                                     HALA Y. JARBOU
                                                                     CHIEF UNITED STATES DISTRICT JUDGE